# UNITED STATES DISTRICT COURT
для the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One silver iPad<br>DEA SSEE M000128202 | )<br>)<br>)  Case No.  '22 MJ3356<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-6, incorporated herein by reference.

located in the    Southern    District of    California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 and 846 | Possession with the Intent to Distribute Controlled Substances and Conspiracy Related Thereto |

The application is based on these facts:
See Affidavit of DEA Special Agent D. Vargas, which is hereby incorporated by reference and made part hereof.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

D. Vargas, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone        *(specify reliable electronic means)*.

Date:   09/12/2022

*Judge's signature*

City and state:  San Diego, California        Hon. Allison Goddard, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent D. Vargas, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

> One green iPhone (belonging to Charles Phillip SMITH)
> DEA SSEE S001173184
> (**Target Device 1**)

> One black iPhone (belonging to SMITH)
> DEA SSEE S001173185
> (**Target Device 2**)

> One blue iPhone (belonging to Kevin Lee HAMPTON)
> DEA SSEE S001553937
> (**Target Device 3**)

> One blue cracked iPhone (belonging to HAMPTON)
> DEA SSEE S001173186
> (**Target Device 4**)

> One blue (Nike case) iPhone (belonging to HAMPTON)
> DEA SSEE S001553938
> (**Target Device 5**)

> One silver iPad (belonging to HAMPTON)
> DEA SSEE M000128202
> (**Target Device 6**) (collectively, the **Target Devices**)

as further described in Attachments A-1, A-2, A-3, A-4, A-5, and A-6, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 and 846 as further described in Attachment B. The requested warrant relates to the investigation of SMITH and HAMPTON, who were encountered on or about August 31, 2022, during a traffic stop with approximately 4.56 kilograms (10.05 pounds) of methamphetamine; 17 oblong-shaped, pharmaceutical-style pills, with pill imprint IP 207 (suspected Acetaminophen and Oxycodone Hydrochloride); and approximately 200 blue, circular-shaped, pharmaceutical-style pills with "30" inscribed on one side and a boxed "M" on the other, weighing approximately 62.6 grams (0.14 pounds), that officers recognized, based on training and experience, as counterfeit Oxycodone 30mg pills

containing fentanyl and commonly referred to as "M30s," "blues," and/or "percs." Testing of the pills is awaited. The **Target Devices**, which were seized during that stop, are currently in the custody of the Drug Enforcement Administration (DEA) San Diego Field Division (SDFD), San Diego County Integrated Narcotics Task Force (NTF) Team 8 Office, at the San Diego International Airport (SDIA), 3225 North Harbor Drive, San Diego, California 92101.

2.  The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining search warrants for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3.  I am a Special Agent (SA) Criminal Investigator for the DEA, and I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered by law to conduct investigations and to make arrests for felony offenses. I was hired by the DEA in July 2020. I am currently assigned to DEA's SDFD, San Diego County Integrated NTF Team 8, at the SDIA, and have been so assigned since March 2021. NTF Team 8 is comprised of DEA SAs, Task Force Agents (TFAs) from the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI), and Task Force Officers (TFOs) who are Detectives (federally cross-sworn TFOs) from the San Diego Police Department (SDPD) and San Diego County Sheriff's Department (SDSD), who primarily investigate illegal drug trafficking organizations operating in the United States and internationally, including those organizations whose operations involve the distribution of wholesale and retail quantities of cocaine, methamphetamine, marijuana, heroin, and their derivatives in and around the San Diego, California area. NTF Team 8 is also responsible for the interdiction

of drugs and drug proceeds being trafficked through SDIA as well as through local bus and train stations.

4. I attended the DEA Academy for approximately 14 weeks. At the DEA Academy, I was trained in the various aspects of conducting narcotics investigations to include surveillance operations, confidential source management, firearms training, law, report writing, and undercover operations. In addition, I also was trained in and have had conversations with other law enforcement officers and agents regarding quantities of poly-drugs intended for sale and distribution.

5. In October 2020, I was sworn as a DEA SA and since then I have been involved in over 50 narcotic investigations and have made over 20 arrests for violations of the California Health & Safety Code and Title 21 of the United States Code. These investigations and arrests involved: (1) unlawful importation, exportation, manufacture, possession with intent to distribute, and distribution of narcotics; (2) conspiracies associated with narcotic offenses; and (3) smuggling of narcotics into the United States. These investigations have involved debriefing defendants, witnesses, and informants; conducting surveillance; executing search warrants; seizing narcotics and narcotics-related assets; and making arrests for narcotics-related offenses.

6. Prior to joining DEA, I was a Border Patrol Agent-Intelligence of the United States Customs and Border Protection, United States Border Patrol (USBP), assigned to the Sector Intelligence Unit, and was employed as a full-time, sworn federal agent with the USBP since 2007. I graduated from the USBP Basic Border Patrol Training Academy, which was comprised of a 19-week Training Academy curriculum and covered specialized training in the Immigration and Naturalization Act, criminal law generally, and statutory authority, as well as cross-training in Title 21 of the United States Code – Controlled Substance Act (CSA) violations, and cross-training in Title 19 of the United States Code - Customs laws. I also have been trained in investigating various violations of federal law, including alien smuggling, narcotics smuggling, weapons smuggling, and bulk-currency

smuggling. I have worked with and learned from other agents and criminal investigators with extensive experience in these types of investigations as well.

7. I have debriefed numerous defendants, informants, and witnesses who have personal knowledge regarding narcotics trafficking organizations. I also have conducted formal and informal interviews to elicit sensitive information from witnesses, suspects, and others, including those who are hostile, confrontational, reluctant, and in distress. I am familiar with narcotics traffickers' methods of operation, including the manufacture, sales, distribution, storage, and transportation of controlled substances including, but not limited to, heroin, methamphetamine, fentanyl, and cocaine.

8. Based upon my training and experience, my participation in the investigation of narcotic organizations, and consultations with law enforcement officers experienced with narcotic trafficking, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug traffickers often work in concert utilizing cellular/mobile telephones and tablets[1] because they are mobile and provide instant access to calls, text messaging capabilities, web, and voice messages.

    b. Drug traffickers often use cellular/mobile telephones and tablets in order to arrange the distribution or possession with the intent to distribute their illegal cargo.

    c. Drug traffickers often use cellular/mobile telephones and tablets in order to provide instructions and synchronize an exact drop off and/or pick up

---

[1] I am aware that certain tablets, including a range of Apple iPads, can connect to cellular services and act as stand-alone mobile devices. I am further aware that, even for iPads that lack cellular capability, they nevertheless have been used by drug traffickers in the manner discussed in items a through d due to the wide availability of public and private Wi-fi that makes them similarly mobile to cellular devices. Additionally, iPads also may yield evidence of drug trafficking activities that occur over cellular devices. This is because iPads often mirror activity occurring on the user's iPhone. This is accomplished through Apple iCloud, which is built into every Apple device, enabling users to keep the data on the iPad and iPhone in sync. For example, iCloud enables users to take a photograph with their iPhone and find it in the photo library of their iPad without having to connect the phone to the tablet.

4

      time of their illegal cargo.

  d. Drug traffickers often use cellular/mobile telephones and tablets to notify or warn accomplices of law enforcement activity, including the presence and posture of marked and unmarked units.

9. Based upon my training, experience, consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular/mobile telephones and tablets (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone and tablet. Specifically, searches of cellular telephones and tablets of individuals involved in the trafficking of narcotics may yield evidence:

  a. tending to indicate efforts to distribute or possess with the intent to distribute federally controlled substances;

  b. tending to identify accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the distribution or possession with the intent to distribute federally controlled substances;

  c. tending to identify co-conspirators, criminal associates, or others involved in the distribution or possession with the intent to distribute federally controlled substances;

  d. tending to identify travel to or presence at locations involved in the distribution or possession with the intent to distribute federally controlled substances, such as stash houses, load houses, or delivery points;

  e. tending to identify the user(s) of, or person(s) with control over or access to, the **Target Devices**; and/or

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

//

5

### FACTS SUPPORTING PROBABLE CAUSE

10. On August 31, 2022, at approximately 8:46 p.m., SDPD Officers were patrolling in the City of San Diego, California. While patrolling, an officer observed a black 2020 Dodge Charger bearing California license plates (the Dodge) traveling north on Interstate 5 (I-5) near the Main Street exit at approximately 83 miles per hour, in violation of California Vehicle Code (VC) 22349(a) – speeding over 65 miles per hour. The officers conducted a traffic enforcement stop on the Dodge, which yielded on I-5 north just south of the L Street exit.

11. The driver, SMITH, and passenger, HAMPTON, produced identification documents. During the encounter, the officer smelled the odor of burned marijuana, and SMITH admitted to smoking prior to driving the Dodge. The officer requested a narcotics K-9 officer to respond to the scene. After a short period, a San Diego Sheriff's Deputy assigned to the Border Crime Suppression Team (BCST) arrived on scene with his trained narcotics detection K-9 "Blue," who is trained to detect and alert to the odor of heroin, cocaine, methamphetamine, and their derivatives.

12. During the sniff, Blue alerted to the trunk of the Dodge. After the positive alert, an officer conducted a search of the Dodge and located a "Inflatable Rectangular Family Pool" box in the trunk. A search of the box yielded 10 clear, plastic, Ziploc-style baggies, weighing approximately 4.56 kilograms (10.05 pounds), containing an off-white crystalline substance, which investigators recognized, based on training and experience, as methamphetamine. A sample of the substance tested positive for methamphetamine. The box also contained 17 oblong-shaped, pharmaceutical-style pills, with pill imprint IP 207 (suspected Acetaminophen and Oxycodone Hydrochloride); and a multi-hundred pill quantity of blue, circular-shaped, pharmaceutical-style pills with "30" inscribed on one side and a boxed "M" on the other, weighing approximately 62.6 grams (0.14 pounds), that officers recognized, based on training and experience, as counterfeit Oxycodone 30mg pills containing fentanyl and commonly referred to as "M30s," "blues," and/or "percs." Testing of the pills is awaited.

13. SMITH and HAMPTON were placed under arrest on California State drug sales offenses and transported to the SDPD Southern Division for processing.

14. **Target Device 1** was found between the center console and driver seat (where SMITH was seated) of the Dodge. **Target Device 2** was found on SMITH's person. **Target Devices 3** and **5** were found in the passenger seat (where HAMPTON was seated) of the Dodge. **Target Devices 4** and **6** were located in the backseat of the Dodge inside a Louis Vuitton backpack, which HAMPTON claimed ownership of.

15. At the SDPD Southern Division, SMITH and HAMPTON claimed ownership of their respective **Target Devices**.

16. Based upon my experience, training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the **Target Devices** and that this data may constitute evidence of crimes as described in Attachment B. I hereby request that the court issue warrants authorizing law enforcement agents and/or other federal and state law enforcement officers to search the **Target Devices**, and seize the items listed in Attachment B, using the methodology described below.

17. In light of the above facts and my experience and training, I believe that there is probable cause to believe that SMITH and HAMPTON were using the **Target Devices** to communicate with others to further the distribution or possession with the intent to distribute federally controlled substances. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug trafficking event in the days and weeks prior to an event. I am also aware that co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest in order to determine the whereabouts of the proceeds. Accordingly, I request permission to search the **Target Devices** for data beginning on

August 1, 2022 (approximately one month before their arrests), up to and including September 1, 2022 (the day after the offense).

## METHODOLOGY

18. It is not possible to determine, merely by knowing a cellular telephone's or tablet's make, model, and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones and tablets do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone and tablet models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All analysis of the data contained within the **Target Devices** and their memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of the warrants.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to the warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or even months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

21. Law enforcement has not previously attempted to obtain the evidence sought by this affidavit.

## CONCLUSION

22. Based on all of the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of SMITH's and HAMPTON's violations of Title 21, United States Code, Sections 841 and 846. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the items described in Attachments A-1, A-2, A-3, A-4, A-5, and A-6, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
D. Vargas
DEA Special Agent

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 12th day of September, 2022

_____
HONORABLE ALLISON GODDARD
United States Magistrate Judge

9

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

>One green iPhone (belonging to Charles Phillip SMITH)
>DEA SSEE S001173184
>**(Target Device 1)**



**Target Device 1** is in custody of the Drug Enforcement Administration (DEA) San Diego Field Division (SDFD), San Diego County Integrated Narcotics Task Force (NTF) Team 8 Office, at the San Diego International Airport (SDIA), 3225 North Harbor Drive, San Diego, California 92101.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

One black iPhone (belonging to SMITH)
DEA SSEE S001173185
(**Target Device 2**)




**Target Device 2** is in custody of the DEA SDFD, San Diego County NTF Team 8 Office, at the SDIA, 3225 North Harbor Drive, San Diego, California 92101.

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

One blue iPhone (belonging to Kevin Lee HAMPTON)
DEA SSEE S001553937
(**Target Device 3**)



**Target Device 3** is in custody of the DEA SDFD, San Diego County NTF Team 8 Office, at the SDIA, 3225 North Harbor Drive, San Diego, California 92101.

# ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

> One blue cracked iPhone (belonging to HAMPTON)
> DEA SSEE S001173186
> (**Target Device 4**)



**Target Device 4** is in custody of the DEA SDFD, San Diego County NTF Team 8 Office, at the SDIA, 3225 North Harbor Drive, San Diego, California 92101.

## ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

>One blue (Nike case) iPhone (belonging to HAMPTON)
>DEA SSEE S001553938
>(**Target Device 5**)



**Target Device 5** is in custody of the DEA SDFD, San Diego County NTF Team 8 Office, at the SDIA, 3225 North Harbor Drive, San Diego, California 92101.

## ATTACHMENT A-6
PROPERTY TO BE SEARCHED

The following property is to be searched:

>One silver iPad (belonging to HAMPTON)
>DEA SSEE M000128202
>**(Target Device 6)**



**Target Device 6** is in custody of the DEA SDFD, San Diego County NTF Team 8 Office, at the SDIA, 3225 North Harbor Drive, San Diego, California 92101.

# ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the electronic devices described in Attachments A-1, A-2, A-3, A-4, A-5, and A-6 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the electronic device for evidence described below. The seizure and search of the electronic devices shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the electronic devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 1, 2022 (approximately one month before their arrests), up to and including September 1, 2022 (the day after the offense):

a. tending to indicate efforts to distribute or possess with the intent to distribute federally controlled substances;

b. tending to identify accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the distribution or possession with the intent to distribute federally controlled substances;

c. tending to identify co-conspirators, criminal associates, or others involved in the distribution or possession with the intent to distribute federally controlled substances;

d. tending to identify travel to or presence at locations involved in the distribution or possession with the intent to distribute federally controlled substances, such as stash houses, load houses, or delivery points;

e. tending to identify the user(s) of, or person(s) with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, Sections 841 and 846.